UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAVEMENT TECHNOLOGY, INC. | ) | |
| 24144 Detroit Road | ) | |
| Westlake, OH 44145, | ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| v. | ) | |
| | ) | |
| TOTAL ASPHALT MAINTENANCE, INC. | ) | |
| 600 N. Harley Street, No. 170 | ) | |
| York, PA 17404 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| TOTAL ASPHALT MAINTENANCE, INC. | ) | |
| C/O Registered Agents, Inc. | ) | |
| 6545 Market Avenue North, Ste. 100 | ) | |
| North Canton, OH 44721 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| GREENWAY ASPHALT LLC | ) | |
| C/O Charlie M. Breidenbach | ) | **COMPLAINT** |
| 10270 Spartan Drive, Suite N | ) | **JURY TRIAL DEMANDED** |
| Cincinnati, OH 45215 | ) | |
| | ) | |
| Defendants. | ) | |

For its Complaint against defendants Total Asphalt Maintenance, Inc. ("Total") and

Greenway Asphalt, LLC ("Greenway", and collectively with Total, "Defendants") plaintiff

Pavement Technology, Inc. ("Pavetech") alleges as follows:

- 1 -

4902-2083-3074, v. 1

**Parties**

1.      Pavetech is an Ohio corporation with its principal place of business in Westlake, Ohio.  Pavetech is in the business of, among other things, selling and applying an asphalt rejuvenator known as Reclamite®.

2.      Total is a Pennsylvania corporation with its principal place of business in York, Pennsylvania.  Total is in the business of, among other things, manufacturing, marketing and selling a product called Veritas Green.  Total markets and sells Veritas Green as an asphalt rejuvenator.  Total has sold, or attempted to sell,Veritas Green to customers in Ohio.

3.      Greenway is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio.  Greenway is in the business, of among other things, marketing and selling Veritas Green.  Greenway markets and sells Veritas Green as an asphalt rejuvenator and acts as an agent of Total.

**Background of Asphalt Rejuvenators**

4.      Around 375 million tons of asphalt paving are used annually in the United States to pave roads, parking lots, runways, walkways and other surfaces.  Asphalt pavement is comprised of sand and stone (aggregate) held together with asphalt cement (also known as the asphalt binder).  Asphalt cement is derived from crude oil after the naphtha, gasoline, kerosene and other fractions are removed.  Asphalt cement is comprised of asphaltenes and maltenes.

5.      Certain of the maltenes in the Asphalt cement react with oxygen at ambient temperatures and degrade when exposed to air, UV radiation, water, and high pavement temperatures.  As the maltenes oxidize over time, the asphalt cement becomes brittle, which results in cracking and raveling of the asphalt pavement.  The following is a photograph of

- 2 -

asphalt that has begun to deteriorate as a result of the degradation of the maltenes in the asphalt cement:



6.      Reclamite® is an asphalt rejuvenator that has been on the market for more than 50 years.  Reclamite® is a petroleum-based product.  When applied to asphalt pavement, Reclamite® penetrates into the asphalt and replaces the maltene oils that have oxidized. The Federal Highway Administration, the U.S. Department of Transportation and various state's Departments of Transportation have evaluated Reclamite® and concluded that it successfully rejuvenates weathered materials in a manner that slows pavement deterioration.  Reclamite® works by replacing the oxidized maltene molecules, thereby restoring the balance between the asphaltenes and the maltenes in the asphalt binder.

7.      The Air Force Weapons Laboratory sponsored a study, dated May 1970, entitled "Rejuvenation of Asphalt Pavement" which consisted of a laboratory investigation of five products, including Reclamite®.  The study concluded that application of Reclamite® improved the viscosity of the asphalt binder and substantially reduced the loss of aggregate.

8.      The Naval Facilities Engineering Command sponsored a 1970 study of Reclamite® led by the Naval Civil Engineering Laboratory at Port Hueneme, California.  The study examined the field use of Reclamite® by multiple governmental agencies, including several Federal users, the California State Division of Highways and several city and county

- 3 -

governments.  The study concluded that Reclamite® had a beneficial effect when applied to asphalt.

9.      In a publication known as "Value Engineering" (August 1973), the U.S. Navy reported the results of its evaluation of Reclamite®.  That study involved the application of Reclamite® on three roads at the Naval Weapons Center, China Lake, California.  At periodic intervals, photographs, and core samples were taken to assess the effectiveness of the product. The test covered a period of almost two years.  The field tests and laboratory reports "show conclusively that Reclamite® does prolong the life of asphalt concrete pavements."

10.     A study sponsored by the Air Force Civil Engineering Center and conducted by the U.S. Army Corps of Engineers, Waterways Experiment Station, Vicksburg, Mississippi, in February 1976, involved treating adjacent pavement areas at three Air Force bases with four proprietary rejuvenator products, including Reclamite®.  One of the Air Force bases was located in the dry, hot southwestern part of the United States.  A second base was located in the humid, hot southeastern part of the country.  The third base was located in the cold north-central part of the country.  The study covered a period of four years and concluded that Reclamite® effectively rejuvenated the old asphalt binder at each base.

11.     The Geotechnical Laboratory of the U.S. Army Engineer Waterways Experiment Station in Vicksburg, Mississippi (March 1973) evaluated the use of Reclamite® at the Lajes Airfield in the Azores.  Payment was contingent on the asphalt pavement meeting certain performance specifications following the application of Reclamite®.  The test results demonstrated that the Reclamite® rejuvenated asphalt significantly exceeded the performance specifications.

12.     In 1997, the City of Orlando, Florida commissioned a study by Ardaman & Associates, Inc., a Goetechnical, Environmental and Materials consulting firm, to evaluate the use of Reclamite® on roads in Orlando.  Among its conclusions, the study found that application of Reclamite® "imparts favorable properties to neat asphalt binders."

13.     In 2004, Hillsborough County, Florida conducted a study of Reclamite® and concluded that it improved the performance of the binders in the asphalt pavement to which it had been applied.

14.     Charleston County, South Carolina conducted an eight-year study of Reclamite® and found that it extended the life of asphalt by at least seven years.

15.     Michigan State University study conducted a study of Reclamite® and other asphalt treatments and found that Reclamite® was not only effective, but one of the "best" rejuvenators tested.

**<u>Veritas Green</u>**

16.     As discussed in more detail below, Defendants deliberately obfuscate the composition of Veritas Green.  However, based on Defendants' marketing materials, Veritas Green apparently contains a product known as Sylvaroad RP 1000.

17.     Sylvaroad RP 1000 was the brand name for a product manufactured by Kraton Corporation.  From published sources, itis made from Crude Tall Oil and Crude Sulphate Turpentine.[1]

18.     Tall Oil is a viscous yellow-black odorous liquid obtained as a by-product of the "kraft process" when pulping mainly coniferous trees.  The "kraft process" is a process for conversion of wood into wood pulp, the main component of paper.

---

[1]*See, e.g.,* https://www.revistatransportes.org.br/anpet/article/download/2920/1045/14496; https://www.athensjournals.gr/technology/2017-4-2-1-Lu.pdf.

19.     Crude Sulphate Turpentine is a solvent.

20.     According to marketing materials for Veritas Green, the product also contains Tall Oil Fatty Acid, which is a viscous, yellow-black chemical compound.  It is a mixture of fatty acids, rosin acids, and unsaponifiables. It also is a by-product of the kraft process.

21.     Tall Oil Fatty Acid has a variety of uses, including being used as a solvent or wetting agent in a variety of manufacturing processes.

22.     The Safety Data Sheet ("SDS") for Veritas Green, a copy of which is attached as Exhibit A, does not disclose the chemical registry numbers ("CAS No.") of any ingredients of Veritas Green, despite the existence of chemical registry numbers for Crude Tall Oil, Tall Oil Fatty Acids, and turpentine.

23.     Veritas Green does not contain any petroleum products and, therefore, does not contain the chemical functionalities that are found in conventional asphalt.  When applied to an asphalt pavement, Veritas Green does not replace or restore the maltenes lost through oxidation. Instead, it softens and dilutes the remaining maltenes and asphaltenes in the pavement.

### Defendants' False and Misleading Advertising

**I.      The Mills Letter.**

24.     In December, 2024, Ethan Mills, the Chief Financial Officer of Greenway, sent a letter to a customer of Pavetech located in Ohio, a copy of which is attached as Exhibit B (the "Mills Letter").

25.     The Mills Letter contains the logos of Greenway and Veritas Green.  It also notes that Greenway is a partner of Total in asphalt rejuvenation.

26.     The Mills Letter begins by stating:

I am going to provide an overview of our experience with Reclamite and how we've helped other municipalities veer away from it and treat there (sic) roads more effectively with Vertis Green™.

Maltene Replacement Technology (trade name Reclamite®) is cheap. * * *

The concept of "MRT" [Maltene Replacement Technology] as explained by the manufacturer is only partially true.

27.     The assertion that the concept behind Reclamite® is only "partially true" necessarily alleges that Pavetech's statements about of Reclamite® are "partially false."

28.     The Mills Letter claims that with regard to Reclamite®, its efficacy is:

Partially true, in theory, because every asphalt binder is different. So one size cannot "fit all" if replacement is what you are after. And while the MRT product [i.e., Reclamite®] does contain some of the same components as the asphaltic binder - principally maltenes and asphaltenes, the maltene fraction in the binder further contains saturates, aromatic, acidifins and nitrogen compounds as well. These "other" fractions are lost due to volatility and/or cross linking to form larger "asphaltene" compounds as the pavement ages. This gives greater larger "brittle" structures of asphaltenes that increasingly agglomerate – the effect of which is the stiffening, or aging. So the claim that MRT will replace all of this in aged binder is hard to conceive.

29.     Neither Pavetech nor the manufacturer of Reclamite® claim that Reclamite® will replace every element in the asphalt binder that is lost due to weathering.  Instead, Pavetech and the manufacturer of Reclamite have claimed, and demonstrated through repeated testing, that Reclamite® replaces the maltenes that have been lost from the binder as it ages.

30.     The statement in the Mills Letter that Pavetech claims that "MRT will replace all of this in aged binder" is false and misleading.

31.     The Mills Letter further claims "because the MRT material is of the same basic chemistry as the asphalt (petroleum) it too will begin to age and oxidate at a similar if not faster rate once it is applied to the pavement."

32.     This statement is objectively false because Reclamite® does not have the same basic chemistry as asphalt and does not oxidize at the same rate as asphalt, let alone faster.

- 7 -

33.     The Mills Letter also claims that "Asphalt Binder is made from the sludge found at the bottom of a barrel of crude – which stiffens as it oxidizes. So, by essentially applying some fresh petroleum to the aged road you will see a certain 'rejuvenative' action."

34.     This statement is misleading and disparaging in that it suggests that Reclamite® is manufactured from "sludge," but then suggests that Reclamite® is merely "fresh petroleum" when it is in fact specially formulated to rejuvenate asphalt.

35.     Next, the Mills Letter alleges "[i]t is also important to note that these chemicals are not friendly…"

36.     This statement is misleading because it suggests that Reclamite® is materially more environmentally harmful than Veritas Green.

37.     The Mills Letter falsely claims that "VG was developed in 2009 by the Kraton Corporation (KRA symbol) as a performance additive to manufacturing and recycling asphalt." In fact, Sylvaroad RP 1000, not Veritas Green, was developed by the Arizona Chemical Company (later acquired by Kraton) as a product to be used in processing recycled asphalt – not for use as a rejuvenator of existing asphalt roadways.

38.     The Mills Letter further claims that the Sylvaroad RP 1000 product contained in Veritas Green:

> works is to restore the physical attributes of ashalt (sic) binder back to the original . . . . Adding SP1000 will disrupt the asphaltene network and restore the physical properties back to the original allowing the asphaltic binder to flow again.

39.     These statements are objectively false.  Veritas Green cannot "restore the physical properties to original."  Nothing in Veritas Green is original to asphalt.  Nor can Veritas Green allow the asphalt binder to "flow again."

40.     The Mills Letter claims that "[i]t is also important to note that our product contains NO SOLVENTS whatsoever, is water-based and non-toxic, so even if we do overspray onto plants, it will not burn the landscaping."

41.     These statements are objectively false.  The Sylvaroad RP 1000 product contains Crude Sulphate Turpentine which is a solvent. The Veritas Green product also contains Tall Oil Fatty Acid, which is also a solvent.  In addition, the Veritas Green SDS states that it may be harmful if swallowed or if it comes in contact with skin, and that "35% of the mixture consists of ingredient(s) of unknown toxicity."  (Exhibit A.)  It also says that Veritas Green should be labelled "Danger," which is the strongest warning signal under Occupational Health and Safety Administration ("OSHA") guidance.

42.     Under Federal Trade Commission Guides for the Use of Environmental Marketing Claims (the "FTC Guides") it is deceptive to misrepresent, directly or by implication, that a product is non-toxic. "A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally. Therefore, marketers making non-toxic claims should have competent and reliable scientific evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify their claims to avoid deception."  16 C.F.R. 260.10.  As demonstrated by their own SDS, Defendants have no such competent and reliable scientific evidence.

43.     Finally, the Mills Letter repeatedly refers to Reclamite® as "cheap."  These statements are misleading as they falsely imply that Reclamite® is of lesser quality than similar products. In addition to his letter, Mr. Mills also sent an email to a customer of Pavetech on December 20, 2024, again specifically mentioning Reclamite®.  (Exhibit B.)  The email also attached a copy of the Mills Letter.

- 9 -

44.     In his email, Mr. Mills claimed that Veritas Green is patented.   However, neither Greenway nor Total provides a patent number as required by 35 U.S.C. § 287(a) and Pavetech has been unable to find any patent covering the Veritas Green product.

45.     Greenway also falsely claims that Veritas Green restores essential oils to asphalt and falsely claims that it restores "the asphalt to its original state."  In its original state, the binder in asphalt is purely petroleum based.  Nothing in Veritas Green is petroleum based, so it is not possible for its to restore asphalt to its "original state."

46.     Mr. Mills also falsely claimed in the email that Veritas Green could increase the service life of asphalt for "15-20 years."  The Sylvaroad RP 1000 product, on which the Veritas Green product is apparently based, was first developed less than 15 years ago.  Thus, it is impossible for Defendants to substantiate that application of Veritas Green to existing asphalt pavement will increase the service life of that asphalt for "15-20 years."

47.     The December 20, 2024, email also contained a link to a YouTube page authored by Total, https://www.youtube.com/watch?v=S2LVlffXf2w.

48.     The YouTube video claimed that Veritas Green was superior to traditional petroleum-based rejuvenators, i.e., Reclamite®, on "every important technical level."

49.     This statement is unsubstantiated and objectively false.

50.     The YouTube video also claimed that Veritas Green could "reverse the aging process of asphalt," is "solvent free," and that "perpetual pavement is a reality" with the use of Veritas Green.

51.     These statements are objectively false.  No product can "reverse" the aging process of asphalt (although Reclamite® can rejuvenate the asphalt).  As noted above, Veritas Green is not solvent free.  Veritas Green will also not produce "perpetual pavement."

- 10 -

II.    **Defendants' Misleading Internet Marketing.**

52.    Both Greenway and Total's internet marketing contain similar misrepresentations.

53.    For example, Total's website claims "[w]ith over 10 years in the making – our patented, enhanced tall oil asphalt rejuvenator is the future of asphalt maintenance. Our proprietary Total Asphalt Rejuvenation product combines sustainability and cutting-edge technology, making it the environmentally friendly choice for your projects. Veritas Green™ is non-toxic, water-based, and crafted from pine trees. Its rapid drying time eliminates tracking and disruption. Plus, it contains no VOCs or solvents, ensuring a safer environment."  (*See* Exhibit C.)

54.    These statements are objectively false.

55.    First, Total again claims that Veritas Green is patented.  However, Total provides no patent number as required by 35 U.S.C. § 287(a) and Pavetech has been unable to find any applicable patent.

56.    Total further claims that Veritas Green is "environmentally friendly."  Under the FTC Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit." 16 C.F.R. 260.04.

57.    Total next claims that Veritas Green is non-toxic and water based.  The claim that it is non-toxic is deceptive, as is the claim it is water based when, according to its SDS, it is composed of "modified polymer emulsion," "polyol ester," and "Carbon Black."  (Exhibit A at 2.)

58.    Finally, Total claims that Veritas Green contains no solvents, when again at least some of its alleged ingredients are solvents.

59.     In an advertisement on LinkedIn, Total made a series of similarly deceptive and misleading statements.  (Exhibit D.)

60.     Total again claimed that Veritas Green was "eco-friendly" and "non-hazardous" compared to "traditional, chemically based rejuvenators" that "comprom[ise] the health of residents or the environment."

61.     A reasonable consumer would understand the reference to "traditional rejuvenators" to mean maltene replacement technology rejuvenators such as Reclamite®.

62.     These statements are false and misleading in that they claim Veritas Green is materially more environmentally friendly than Reclamite® and that Reclamite® is unreasonably dangerous to the health of people and the environment.

63.     These statements also violate the FTC Guides.

64.     Total also claims that Veritas Green restores the "original properties" of asphalt. This statement is objectively false as no treatment can fully restore the original properties of asphalt.

65.     Total next claims that "traditional asphalt rejuvenators often rely on petrochemical derivatives and solvents."

66.     This statement is misleading because it implies that Veritas Green does not contain solvents, which it in fact does, and that Reclamite® contains solvents, which it does not.

67.     Total goes on to claim that traditional asphalt rejuvenators, such as Reclamite®, place residents and maintenance workers at "risk of skin and respiratory issues due to exposure to harmful chemicals," adversely affect "local ecosystems and public health" and "require special disposal methods to prevent environmental contamination."

68.     These statements are all objectively false as applied to Reclamite®.

69.     Total's statement that Veritas Green "eliminates these concerns" is also false.

70.     Total's claim that Veritas Green has a "natural formulation" is also false, given that its listed ingredients are a proprietary "modified polymer emulsion," a proprietary "polyol esther," and carbon black, which is a material produced by the incomplete combustion of coal tar, vegetable matter, or petroleum products, including fuel oil, fluid catalytic cracking tar, and ethylene cracking in a limited supply of air.

71.     Finally, Total's claim that Veritas Green is a "safer, greener, and equally effective solution for extending the life of asphalt pavements" is unsubstantiated and false.

72.     Greenway also claims that Veritas Green contains no solvents, which again is objectively false.  (Exhibit E.)

73.     Another Greenway claim, that Veritas Green is a National Center for Asphalt Technology "approved material," is false because the National Center for Asphalt Technology does not approve specific materials.  (Exhibit F.)

74.     The foregoing statements are just examples of Defendants' deceptive and misleading statements in their advertising.

75.     In addition, Defendants' deceptive and misleading statements cause search engines and AI programs to return false information about Reclamite® and Veritas Green.

**III.     The Veritas Green Safety Data Sheet.**

76.      OSHA requires that chemical manufacturers, distributors, and importers provide safety data sheets ("SDS") for all chemicals to all downstream users.

77.     An SDS contains information such as the properties of each chemical; the physical, health, and environmental health hazards; protective measures; and safety precautions for handling, storing, and transporting the chemical.

78.     The author of an SDS "shall ensure that the information provided accurately reflects the scientific evidence used in making the hazard classification. If the chemical manufacturer, importer or employer preparing the safety data sheet becomes newly aware of any significant information regarding the hazards of a chemical, or ways to protect against the hazards, this new information shall be added to the safety data sheet within three months." 29 C.F.R. 1910.1200(g)(5).

79.      An SDS is required to contain certain categories of information, including the name and chemical registration number for any ingredients. 29 C.F.R. 1910.1200, Appendix D.

80.     An exception exists if the ingredient is a "trade secret." *Id.*

81.     A trade secret for purposes of an SDS has the same meaning as a common law trade secret.  29 C.F.R. 1910.1200, Appendix E, citing Restatement of Torts section 757, comment b (1939).

82.     A party claiming an ingredient is a trade secret has the burden of proving that claim.  29 C.F.R. 1910.1200(i).  In addition, if the concentration of an ingredient is claimed to be a trade secret, a range for that concentration still must be provided.  *Id.*

83.     The composition/information section of the Veritas Green SDS reads as follows:

|  | 3. COMPOSITION/INFORMATION ON INGREDIENTS |
|---|---|

**Substance**

| Chemical Name | CAS No. | Weight-% | Trade Secret |
|---|---|---|---|
| Modified Polymer Emulsion | Proprietary | 20 - 45% | * |
| Polyol Ester | Proprietary | 0 - 10% | * |

- 14 -

| Carbon Black (non-carcinogenic) | 1333-86-4 | 0 - 10% | * |
|---|---|---|---|

85.     The SDS for Veritas Green identifies three "chemical names," "modified polymer emulsion," "polyol ester," and "Carbon Black." (Exhibit A.)  However, the SDS does not provide a Chemical Abstract Number for the modified polymer emulsion or polyol ester ingredients, claiming they are proprietary.

86.     The failure to identify the ingredients used in Veritas Black in the SDS is deceptive and misleading.

87.     The ingredients used in Veritas Green are not trade secrets.  As discussed above, Defendants themselves repeatedly disclose the use of Tall Oil and Tall Oil Fatty Acids in Veritas Green.  They also specifically disclose the use of the Kraton Sylvaroad RP 1000 product in Veritas Green.  An ingredient cannot be considered a trade secret if a party not only does not protect its confidentiality, but affirmatively publishes its identity.

88.     Further, Defendants claim that Veritas Green is "patented."  As a matter of law, something that is patented cannot be a trade secret.

89.     Defendants' failure to disclose the ingredients of Veritas Green is material.  The identity of those ingredients involves information that is important to consumers and, hence, likely to affect their choice of the product.

90.     In addition, the ingredients in Veritas Green are material to Defendants' claims concerning the "environmental friendliness" of the product.

91.     SDSs are also used by governmental and private entities to determine whether a product meets the bid requirements of a contract.  By improperly concealing the ingredients used

in Veritas Green, Defendants are able to compete for business for which they otherwise would
not be qualified.

## Jurisdiction and Venue

92.     Personal jurisdiction over Greenway is proper because Greenway is an Ohio
limited liability company with its principal place of business in Ohio.

93.     Personal jurisdiction over Total is proper because it transacts business in Ohio and
has specifically targeted the Ohio market for the sale of Veritas Green.  (See Exhibit G.)

94.     The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121
and 28 U.S.C. § 1331 and 1338(b) because this action arises under the Federal Trademark Act of
1946, as amended, 15 U.S.C. § 1051 *et seq.*

95.     Venue is proper in this District pursuant to 28 U.S.C.§ 1391(b)(2) because a
substantial part of the events or omissions giving rise to the claim occurred in this District.

## COUNT I

96.     Pavetech incorporates by reference the allegations in paragraphs 1 through 95 of
this Complaint

97.     Defendants have made false or misleading statements of fact in commercial
advertisements and promotions such as the Mills Letter, their Internet Marketing, and in the
Veritas Green SDS, that deceive or are likely to deceive in a material way.  Those false or
misleading statements have been made to customers in Ohio as well as customers in other states.
As a result, Defendants have violated 15 U.S.C. § 1125(a).

97.     Pavetech has been damaged by Defendants' violation of 15 U.S.C. § 1125(a) in an
amount not presently known.  Those damages include, but are not limited to, the expenses that
Pavetech will incur to combat Defendants' false advertising, as well as the profits lost if

Pavetech has either lost business to Defendants or has to reduce its price to compete with Defendants' false advertising.

98.     Pavetech will be irreparably harmed unless Defendants are enjoined from further violations of 15 U.S.C. § 1125(a).

## COUNT II

99.     Pavetech incorporates by reference the allegations in paragraphs 1 through 98 of this Complaint.

100.    As outlined above, Defendants have made representations that Veritas Green has ingredients, characteristics, approval, uses, and benefits that Veritas Green does not have and Defendants have disparaged Reclamite®.  As a result of this conduct, Defendants have violated the Ohio Deceptive Trade Practices Act, R.C. § 4165.01, *et. seq*.

101.    Pavetech has been damaged by Defendants' violations of the Deceptive Trade Practices Act in an amount not presently known.

102.    Pavetech will be irreparably harmed unless Defendants are enjoined from further violations of the Deceptive Trade Practices Act.

## COUNT III

103.    Pavetech incorporates by reference the allegations in paragraphs 1 through 102 of this Complaint.

104.    The Mills Letter contains false statements of fact regarding the integrity of Pavetech.

105.    The statements in the Mills Letter were defamatory *per se* in that they impugned the integrity of Pavetech.

- 17 -

106. Pavetech has proximately suffered general and specific damages because of the publication of these statements.

107. Defendants were at fault for publishing the false statements in the Mills Letter, and upon information and belief, Defendants acted willfully and maliciously in publishing those statements, as demonstrated by their false allegations that Pavetech's products adversely affect "local ecosystems and public health." and "require special disposal methods to prevent environmental contamination."

## COUNT IV

108. Pavetech incorporates by reference the allegations in paragraphs 1 through 107 of this Complaint.

109. Defendants have improperly claimed that Veritas Green is covered by a United States Patent.

110. Defendants have made this false claim about Veritas Green being patented in an effort to persuade customers to purchase Veritas Green instead of Reclamite®.

111. On information and belief, Customers have purchased Veritas Green instead of Reclamite®. Customers were influenced in their purchasing decisions as a result of Defendants' claim that their products were covered by a United States Patent.

112. Pavetech has suffered a competitive injury by Defendants' false claim of patent protection in that it has suffered an economic loss, including the costs to combat Defendants' false claims.

113. Pavetech has been damaged by Defendants' false patent marking in an amount not presently known.

WHEREFORE, Pavetech prays for relief as follows:

A.      For judgment in its favor and against Defendants in the amount of Pavetech's actual damages as shown at trial;

B.      For preliminary and permanent injunctive relief prohibiting Defendants from making false or misleading statements concerning Reclamite®;

C.      For preliminary and permanent injunctive relief to prevent Defendants from making false or misleading statements about their products, including that their products are "environmentally friendly" or that otherwise violate the FTC Guides;

D.      For preliminary and permanent injunctive relief requiring Defendants to properly disclose the ingredients of Veritas Green in its SDS;

E.      For an injunction requiring Defendants to issue corrective notices and advertising to remedy the effects of its prior false advertising;

F.      For judgment in its favor and against Defendants for punitive damages;

G.      For an award in its favor for its attorneys' fees and other litigation costs; and,

I.      For such other and further relief as this Court deems just.

/s/ James B. Niehaus
James B. Niehaus, Esq.        (0020128)
Gregory R. Farkas, Esq.       (0069109)
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
216-515-1660 – Telephone
216-515-1650 – Facsimile
jniehaus@frantzward.com
gfarkas@frantzward.com

Attorneys for Plaintiff
Pavement Technology, Inc.

- 19 -

<u>Jury Demand</u>

Plaintiff demands a trial by jury.

/s/ James B. Niehaus
_____
James B. Niehaus, Esq.      (0020128)
Attorney for Plaintiff